**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X
|  |  | : | Chapter 11 |

*In re:*                                                    :

                                                   :   Case No. 19-23489 (RDD)

MAXCOM USA TELECOM, INC., ET AL.          :

                                                   :   Jointly Administered

          Debtors.[1]                                 :

-------------------------------------------------------------:
                                                   X

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER (I) APPROVING THE (A) ADEQUACY OF THE DISCLOSURE STATEMENT, (B) SOLICITATION OF VOTES AND VOTING PROCEDURES AND (C) FORMS OF BALLOTS, AND (II) CONFIRMING JOINT PREPACKAGED CHAPTER 11 PLAN

Maxcom USA Telecom, Inc. ("Maxcom USA") and Maxcom Telecomunicaciones,

S.A.B. de C.V. ("Maxcom Parent," and together with Maxcom USA, the "Debtors"), having:

    a.      distributed, on or about June 17, 2019 (i) the *Joint Prepackaged Chapter 11 Plan* [Docket No. 12] (as amended pursuant to the *Amended Joint Prepackaged Chapter 11 Plan* and as same may be further modified, amended, or supplemented from time to time, the "Plan"), (ii) Offering Memorandum and Consent *Solicitation Statement* [Docket No. 11] (together with the first and second supplements thereto, the "Disclosure Statement"), and (iii) ballots for voting on the Plan to holders of Claims[2] entitled to vote on the Plan, namely holders of Class A Old Notes Claims, in accordance with the terms of title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the *Amended Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of New York*, as amended, effective June 27, 2013 (as adopted by General Order M-387) (the "Guidelines"), and the Local Rules of Bankruptcy Practice and

---

[1]    The Debtors, together with the last four digits of each Debtor's tax identification number, Maxcom USA Telecom, Inc. (7220) and Maxcom Telecomunicaciones, S.A.B. de C.V. (8KT0). The location of Debtor Maxcom Telecomunicaciones, S.A.B. de C.V.'s corporate headquarters and service address are: Guillermo González Camarena, 2000, Centro Ciudad, Santa Fé, Mexico, CDMX.  The service address for Debtor Maxcom USA Telecom, Inc. is c/o United Corporate Services, Inc., Ten Bank Street, Suite 560, White Plains, NY 10606.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Bankruptcy Code (as defined herein), as applicable.  The rules of interpretation set forth in Article 1.2 of the Plan apply.

Procedure of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules");

b.      posted, on June 17, 2019, the Plan, the Disclosure Statement, the Ballots and the other materials provided to holders of Old Notes in connection with the solicitation of votes on the Plan on the Prime Clerk LLC public website at http://cases.primeclerk.com/maxcom;

c.      published, on June 17, 2019, and again on July 15, 2019 and July 30, 2019, press releases announcing the Company's efforts to restructure the Old Notes through the solicitation of votes on the Plan and the extension of the voting deadline through and including August 14, 2019;

d.      solicited votes on the Plan, beginning on or about June 17, 2019 through August 14, 2019 at 5:00 p.m. (prevailing Eastern Time)

e.      commenced, beginning on August 19, 2019 (the "Petition Date"), these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

f.      operated their business and managed their property during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

g.      filed, on August 19, 2019, the Plan and the Disclosure Statement;

h.      filed, on August 19, 2019, the *Debtors' Motion for Entry of an Order (I) Scheduling Combined Hearing to Consider the Adequacy of the Disclosure Statement and Confirmation of the Plan; (II) Approving the Form and Manner of Notice of Combined Hearing; (III) Approving the Solicitation Procedures; (IV) Waiving Requirement for Meeting of Creditors of Equity Holders; and (V) Granting Related Relief* [Docket No. 13] (the "Solicitation Procedures Motion");

i.      filed, on August 19, 2019, the *Declaration of Erik Gonzalez Laureano in Support of First Day Motions and Applications* [Docket No. 4] (the "First Day Declaration"), detailing, among other things, the facts and circumstances of the Chapter 11 Cases and the restructuring contemplated under the Plan;

j.      filed and served, on August 21, 2019, the *Notice of (I) Commencement of Prepackaged Chapter 11 Case, (II) Combined Hearing on (A) Disclosure Statement and (B) Confirmation of the Plan of Reorganization and Related Matters, and (III) Summary of Chapter 11 Plan* [Docket No. 36] (the "Confirmation Hearing Notice"), consistent with the order granting the Solicitation Procedures Motion [Docket No. 31] (the "Solicitation Procedures Order"), which contained notice of the commencement of this Chapter 11 Case, the date and time initially set for the hearing to consider approval of the Disclosure Statement and Confirmation of the Plan (the "Confirmation Hearing"),

and the initial deadline for filing objections to the Plan and the Disclosure Statement;

k.      filed, on August 19, 2019, the *Declaration of Craig E. Johnson of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Joint Prepackaged Chapter 11 Plan* [Docket No. 3], which detailed the results of the Plan voting process (the "Johnson Tabulation Declaration");

l.      filed, on August 19, 2019, the Affidavit of Craig E. Johnson of Prime Clerk LLC Regarding Service of Solicitation Materials [Docket No. 19], which detailed the materials that were provided to all holders of Old Notes in connection with the solicitation of votes on the Plan (the "Johnson Solicitation Declaration");

m.      filed, on August 27, 2019, the *Affidavit of Service* with respect to the Confirmation Hearing Notice [Docket No. 35] (the "Confirmation Hearing Notice Affidavit");

n.      filed, on September 11, 2019, the *Notice of Filing of Plan Supplement for the Debtors' Prepackaged Plan of Reorganization* [Docket No. 42] (all as modified, amended, or supplemented from time to time, the "Plan Supplement," and which, for purposes of the Plan and this Confirmation Order, is included in the definition of "Plan");

o.      filed, on September 11, 2019, the *Debtors' (I) Memorandum of Law in Support of Entry of an Order (A) Approving the Adequacy of the Disclosure Statement and (B) Confirming the Amended Joint Prepackaged Plan of Reorganization and (II) Omnibus Reply to Objections Thereto* [Docket No. 45] (the "Confirmation Brief");

p.      filed, on September 11, 2019, the *Declaration of Erik Gonzalez Laureano in Support of Confirmation of the Amended Joint Prepackaged Plan of Reorganization* [Docket No. 46] (the "Gonzalez Confirmation Declaration"); the *Declaration of Floris Iking of Alvarez & Marsal Mexico in Support of Confirmation of the Amended Joint Prepackaged Plan of Reorganization* [Docket No. 43] (the "Iking Confirmation Declaration"); and the *Declaration of Christina Pullo of Prime Clerk LLP Regarding Solicitation of Votes and Tabulation of Ballots Cast on the Joint Prepackaged Chapter 11 Plan* [Docket No. 44] (the "Pullo Confirmation Declaration"); and

q.      filed, on September 16, 2019, *Debtors' Supplemental Brief (A) in Further Support of Confirmation and (B) in Reply to Supplemental Objection of Ad Hoc Group* [Docket No. 58].

The Court having:

a.      entered, on August 21, 2019, the Solicitation Procedures Order;

b.      set September 17, 2019 at 2:00 p.m. (prevailing Eastern Time), as the date and time for the Confirmation Hearing, pursuant to Procedural Guidelines for Prepackaged Chapter 11 Cases of this Court, Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code, as set forth in the Solicitation Procedures Order;

c.      reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the First Day Declaration, the Gonzalez Confirmation Declaration, the Iking Confirmation Declaration; the Johnson Tabulation Declaration, the Johnson Solicitation Declaration, the Pullo Confirmation Declaration, the Confirmation Hearing Notice, and all filed pleadings, exhibits, statements, and comments regarding approval of the Disclosure Statement and confirmation of the Plan, including all objections, statements, and reservations of rights;

d.      held the Confirmation Hearing;

e.      heard the statements, representations, arguments and objections made by counsel in respect of approval of the Disclosure Statement and confirmation of the Plan;

f.      considered all oral representations, testimony, documents, filings, and other evidence regarding approval of the Disclosure Statement and confirmation of the Plan; and

g.      taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in the Chapter 11 Cases.

NOW, THEREFORE, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and after due deliberation the Court having further determined that the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and confirmation of the Plan and other evidence presented at the Confirmation Hearing and the record of the Chapter 11 Cases establish just cause for the relief granted herein, the Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.      Findings and Conclusions.**

1.      The findings and conclusions set forth herein and in the record of the
Confirmation Hearing constitute the Court's findings of fact and conclusions of law under
Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy
Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings
of fact, or vice versa, they are adopted as such.

**B.      Jurisdiction, Venue, and Core Proceeding.**

2.      The Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C.
§§157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference* from the United States
District Court for the Southern District of New York, dated January 31, 2012.  The Court has
exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with
the applicable provisions of the Bankruptcy Code and should be approved and confirmed,
respectively.  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409 and
continues to be proper during these Chapter 11 Cases.  Approval of the Disclosure Statement,
including associated solicitation procedures, and confirmation of the Plan are core proceedings
within the meaning of 28 U.S.C. § 157(b)(2) that, under the United States Constitution, the Court
may decide by final order.

**C.      Eligibility for Relief.**

3.      The Debtors were and are entities eligible for relief under section 109 of the
Bankruptcy Code.

**D.     Commencement of the Chapter 11 Cases.**

4.      Commencing on the Petition Date, the Debtors filed voluntary cases under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have operated their business and managed their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

**E.     Objections.**

5.      Any resolutions of any objections to confirmation of the Plan explained on the record at the Confirmation Hearing are hereby incorporated by reference.  All remaining, unresolved objections, statements, informal objections, and reservations of rights, if any, related to the Plan, the Disclosure Statement, or confirmation of the Plan are hereby overruled on the merits.

**F.     Burden of Proof—Confirmation of the Plan.**

6.      The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for confirmation of the Plan.

**G.     Notice.**

7.      As evidenced by the Confirmation Hearing Notice and the record herein, due, adequate, and sufficient notice of the Debtors' request for approval of the Disclosure Statement, confirmation of the Plan, and the Confirmation Hearing, together with the deadline to object to approval of the Disclosure Statement and vote on and object to confirmation of the Plan, has been provided to all parties in interest in the Chapter 11 Cases.  Such notice was adequate and sufficient pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002 and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

**H.**     **Adequacy of Disclosure Statement.**

8.     The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein.  The filing of the Disclosure Statement with the clerk of the Court satisfies Bankruptcy Rule 3016(b).

**I.**     **Ballots and Master Ballots.**

9.     Class A (Old Notes Claims) is the only Class of Claims entitled under the Plan to vote to accept or reject the Plan (the "Voting Class").

10.     The forms of the Ballots and Master Ballots the Debtors used to solicit votes to accept or reject the Plan from holders in the Voting Class adequately addressed the particular needs of the Chapter 11 Cases and were appropriate for holders of Claims in the Voting Class to vote to accept or reject the Plan.

**J.**     **Solicitation.**

11.     As described in the Johnson Tabulation Declaration, the Johnson Solicitation Declaration and the Pullo Confirmation Declaration, the solicitation of votes on the Plan complied with the solicitation procedures set forth in the Solicitation Procedures Motion and approved in the Solicitation Procedures Orders (the "Solicitation Procedures"), was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Guidelines and any other applicable rules, laws, and regulations, including the registration requirements under the Securities Act.

12.     As described in the Johnson Solicitation Declaration, the Plan, the Disclosure Statement, and the Ballot and Master Ballot (collectively, the "Solicitation Packages") were transmitted to all holders of Class A Old Notes Claims on or about June 17, 2019.  Transmission and service of the Solicitation Packages, were timely, adequate, and sufficient.  No further notice is required.

13.     As set forth in the Johnson Tabulation Declaration, the Johnson Solicitation Declaration and Pullo Confirmation Declaration, the Solicitation Packages were distributed to holders of Old Notes Claims in Class A who were the owners of Old Notes as of June 14, 2019 (the date specified in such documents for the purpose of the solicitation).  The establishment and notice of the Voting Record Date were reasonable and sufficient.

14.     The period during which holders of Claims in the Voting Class had to submit acceptances or rejections to the Plan (June 17, 2019 through August 14, 2019) was a reasonable and sufficient period of time for such holders to make an informed decision to accept or reject the Plan.

15.     Under section 1126(f) of the Bankruptcy Code, the Debtors were not required to solicit votes from the holders of Claims or Interests, as applicable, in the Unimpaired Classes (defined below), each of which is conclusively presumed to have accepted the Plan.

**K.     Voting.**

16.     As evidenced by the Johnson Tabulation Declaration and Pullo Confirmation Declaration, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation Procedures Orders, the Disclosure Statement, the Guidelines and any applicable nonbankruptcy law, rule, or regulation.

**L.     Plan Supplement.**

17.     The Plan Supplement complies with the Bankruptcy Code and the terms of the

Plan, and the filing and notice of such documents are good and proper in accordance with the

Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice is

required.  All documents included in the Plan Supplement are integral to, part of, and

incorporated by reference into the Plan.  Subject to the terms of the Plan, and only consistent

therewith, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement

before the Effective Date, subject to compliance with the Bankruptcy Code and the Bankruptcy

Rules.

**M.     Modifications to the Plan.**

18.     Subsequent to solicitation on the Plan and transmission of the Solicitation

Packages, the Debtors made certain modifications to the Plan, including during the Confirmation

Hearing (the "Confirmation Hearing Modifications") identified in paragraph 65 below.  Such

modifications, including the Confirmation Hearing Modifications, do not otherwise adversely

affect or change the treatment of any Claim, but do affect the treatment of Interests.

Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019,

none of the modifications require additional disclosure under section 1125 of the Bankruptcy

Code or re-solicitation of votes under section 1126 of the Bankruptcy Code of holders of Claims

in Class A of the Plan, but do require, pursuant to Bankruptcy Rule 3019(a), a written consent

from Existing Equityholders who hold a sufficient amount of Interests necessary to satisfy

section 1126(d) of the Bankruptcy Code (the "Existing Equityholder Consent") to the Additional

Shareholder Contribution, the Junior PIK Notes Director and the Equity Conversion Option

(each as defined below).  Prior notice regarding these modifications to the Plan, together with the

filing with the Bankruptcy Court of the Plan modifications, and the Confirmation Hearing

Modifications constitute due and sufficient notice of any and all such modifications to all holders

of Claims.  Further, in accordance with section 1127 of the Bankruptcy Code and Bankruptcy

Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed

to have accepted the Plan are deemed to have accepted the Plan as modified by the Plan

modifications, including the Confirmation Hearing Modifications.  No Holder of a Claim shall

be permitted to change its vote as a consequence of the Plan modifications unless otherwise

agreed to by the Holder of the Claim and the Debtors and such change is approved by the Court

in accordance with Bankruptcy Rule 3018(a).  The modifications to the Plan, including the

Confirmation Hearing Modifications, are hereby approved pursuant to section 1127 of the

Bankruptcy Code and Bankruptcy Rule 3019, subject to the Existing Equityholder Consent.  The

Plan as modified shall constitute the Plan submitted for Confirmation.

### N.       Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).

19.       The Plan complies with all applicable provisions of the Bankruptcy Code,

including sections 1122 and 1123, as required by section 1129(a)(1) of the Bankruptcy Code.  In

addition, the Plan is dated and identifies the Entity submitting it, thereby satisfying Bankruptcy

Rule 3016(a).

### (i)       Proper Classification—Sections 1122 and 1123.

20.       The Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the

Bankruptcy Code.  In addition to those claims in Article II of the Plan which need not be

classified, Article III of the Plan provides for the separate classification of Claims and Interests

into five Classes.  Valid business, factual, and legal reasons exist for the separate classification of

such Classes of Claims and Interests.  The classifications were not implemented for any

improper purpose and do not unfairly discriminate between, or among, holders of Claims or

Interests. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

### (ii)    Specified Unimpaired Classes—Section 1123(a)(2).

21.    The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Article III of the Plan specifies that Claims in Classes B through E (the "Unimpaired Classes") are Unimpaired under the Plan. Additionally, Article II of the Plan specifies that Administrative Claims, Professional Claims, Priority Tax Claims and Other Priority Claims will be paid in full in accordance with the terms of the Plan, although these Claims are not separately classified under the Plan.

### (iii)    Specified Treatment of Impaired Classes—Section 1123(a)(3).

22.    The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Old Notes Claims in Class A (the "Impaired Class") are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such Impaired Class.

### (iv)    No Discrimination—Section 1123(a)(4).

23.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

### (v)    Adequate Means for Plan Implementation—Section 1123(a)(5).

24.    The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The provisions in Article IV and elsewhere in the Plan, and in the exhibits and attachments to the Plan and the Disclosure Statement provide, in detail, adequate and proper means for the Plan's implementation, including regarding:  (a) the settlement and discharge of Claims and the

Reinstatement of Interests; (b) the issuance of the Senior Notes and Junior PIK Notes; (c)

payment of the Cash Payment, and, to the extent applicable, the payment of the Early

Participation Consideration; (d) the vesting of estate assets in the Reorganized Debtors; (e)

authorizing the Debtors to take all actions necessary to effectuate the Plan; (f) the continued

appointment of the directors of the Reorganized Debtors; (g) the cancellation of the Old Notes,

Old Notes Indenture and Old Notes Guarantees; (h) except as provided for in the Plan, the

cancellation and discharge of Liens, Subsidiary Guarantee, Intercompany Trust Agreement,

Intercompany Subordination Agreement and any other note, instrument, certificate, share,

purchase right, option, warrant, and any other document evidencing claims on account of the Old

Notes; and (g) the Plan modifications.  Moreover, the Reorganized Debtors will have sufficient

Cash to make all payments required upon the Effective Date pursuant to the terms of the Plan.

### (vi)    Voting Power of Equity Securities—Section 1123(a)(6).

25.    The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code;

provided that pursuant to Bankruptcy Rule 3019(a), the Debtors shall obtain the Existing

Equityholder Consent to the Additional Shareholder Contribution, the Junior PIK Notes Director

and the Equity Conversion Option (each as defined below).

### (vii)    Directors and Officers—Section 1123(a)(7).

26.    The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

The Plan Supplement and Section 4.12 of the Plan, together with this Confirmation Order,

contain provisions regarding the manner of selection of the Reorganized Debtors' directors and

officers that are consistent with the interest of all holders of Claims and Interests and applicable

non-bankruptcy corporate law.

### (viii)    Section 1123(b)—Discretionary Contents of the Plan.

27.    The Plan's discretionary provisions comply with section 1123(b) of the
Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy
Code, thereby satisfying section 1123(b) of the Bankruptcy Code.  The failure to specifically
address a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or
impair the effectiveness of this Confirmation Order.

### a.   Impairment / Unimpairment of Classes—Section 1123(b)(1).

28.    The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.
Article III of the Plan leaves each Class of Claims and Interests Impaired or Unimpaired.

### b.   Settlement, Releases, Exculpation, Injunction, and Cancellation of Liens—Section 1123(b)(3).

29.    Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy
Code, and in consideration for the classification, distribution and other benefits provided under
the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all
Claims and controversies resolved pursuant to the Plan, including all Claims, Causes of Action
and controversies arising prior to the Effective Date, whether known or unknown, foreseen or
unforeseen, asserted or unasserted, by or against any Released Party, or holders of Claims,
arising out of, relating to or in connection with the business or affairs of or transactions with the
Debtors.

30.    The entry of this Confirmation Order shall constitute the Bankruptcy Court's
approval of each of the foregoing compromises or settlements, and all other compromises and
settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its
determination that such compromises and settlements are in the best interests of the Debtors, the
Estates, creditors and other parties in interest, and are fair, equitable and within the range of

reasonableness.  The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.

### c.  Modification of Rights— Section 1123(b)(5).

31.      The Plan is consistent with 1123(b)(5) of the Bankruptcy Code.  Article III of the Plan modifies or leaves unaffected, as the case may be, the rights of certain Holders of Claims, and is subject to the Existing Equityholder Consent with regards to any modifications to the treatment of Existing Equityholders.

### d.  Additional Plan Provisions—Section 1123(b)(6).

32.      The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

### O.      Compliance with the Bankruptcy Code—Section 1129(a)(2).

33.      The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, have satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, the Debtors:

  a.  are each an eligible debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code; and

  b.  have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, the Guidelines, any applicable nonbankruptcy law, rule and regulation, the Solicitation Procedures Orders, and all other applicable law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

### P.      Plan Proposed in Good Faith—Section 1129(a)(3).

34.      The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Court has examined the totality of the circumstances surrounding the filing of

the Chapter 11 Cases, the Plan itself, and the process leading to Confirmation of the Plan, including the support of holders of Claims and Interests for the Plan, and the transactions to be implemented pursuant thereto. The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to restructure the Old Notes in a manner so as to maximize the recovery by holders of the Old Notes.

35.    The Debtors and each of the constituents who negotiated the Plan, including each of their respective officers, directors, managers, members, employees, advisors and professionals (a) acted in good faith in negotiating, formulating, and proposing, where applicable, the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan and (b) will be acting in good faith in proceeding to (i) consummate the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan, and (ii) take any actions authorized and directed or contemplated by this Confirmation Order.

**Q.    Payment for Services or Costs and Expenses—Section 1129(a)(4).**

36.    Any payment made or to be made by the Debtors under the Plan for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

**R.    Directors, Officers, and Insiders—Section 1129(a)(5).**

37.    The Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code. Pursuant to Section 4.12 of the Plan, the Debtors disclosed in the Plan Supplement in advance of the Confirmation Hearing the identity and affiliations of the directors of the Reorganized Debtors as of the Effective Date of Plan, including the process by which the Junior PIK Notes Director (defined below) will be nominated and appointed in accordance with

15

the Confirmation Hearing Modifications.  To the extent any such director or officer is an

"insider" under the Bankruptcy Code, the nature of any compensation to be paid to such director

or officer will also be disclosed.  Each such director and officer shall serve from and after the

Effective Date pursuant to the terms of the organizational documents and other constituent

documents applicable to the Reorganized Debtors.  The proposed directors of the Reorganized

Debtors are qualified, and their appointment to, or continuance in, such roles is consistent with

the interests of holders of Claims and with public policy.

**S.      No Rate Changes—Section 1129(a)(6).**

38.      Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Chapter 11

Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental

regulatory commission.

**T.      Best Interest of Creditors—Section 1129(a)(7).**

39.      The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

The liquidation analysis attached to the Plan Supplement and the other evidence related thereto

in support of the Plan that were proffered or adduced in the Iking Confirmation Declaration or at,

prior to, or in connection with the Confirmation Hearing:  (a) are reasonable, persuasive,

credible, and accurate as of the dates such analysis or evidence was prepared, presented, or

proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not

been controverted by other evidence; and (d) establish that holders of Old Notes Claims will

recover at least as much under the Plan, as of the Effective Date, as such holder would receive if

the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

**U.      Acceptance by Certain Classes—Section 1129(a)(8).**

40.      Classes B through E are each Classes of Unimpaired Claims or Interests under the

Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy

Code.  The holders in the Voting Class, Class A, are Impaired by the Plan and have voted to

accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code.

41.     The following additional holders from the Voting Class, Class A, are deemed to

have accepted the Plan:  Moneda Latin American Corporate Debt; Moneda Deuda

Latinoamericana Fondo de Inversion; Fondo Larrain Vial Renta Fija Latinoamericana; SKB

Trust; Jai-18 Investments Ltd.; Macapix International Inc.; MKB Trust; MAV Trust; Tortona

Capital Ltd.; Inversiones San Felipe Inc.; Arkon CV; Guipuzcoa Ltd.; Barham Corporation;

Kingland Holding Investments Ltd.; Barahona Flores; Kifenor SA; Niscaly SA; Fradon Trading

Inc.; Maistral Corp.; Cove Creek SAI Ltd.; Edificio Nebur SA; Munuga LLC; Gilmore Group

Holdings Inc.; Inversiones Cholito Limitada; Jacques Claudio Stivelman; Viola, Marco; PDC

Investments Ltd.; Schibli, Paloma; Marakena Corp.; Maria Eleonora Wroblewsky; Amunategui,

Miguel; Stivelman, Marcia; Barahona, Hernan; Andina Holding Corp.; Emy CV Ltd.; Barham

Corporation; Tamarila Corp.; Elfenbein Kaufmann, Julian; Errazuriz Arnolds, Cecilia;

Guendelman, Andrea; Mayo, Fernando; Von Krammer Kuhn, Ladislao; Talmaciu, Isaac; Mulina;

Jorge Sánchez y Otros; Notro; and Dressar.

**V.      Treatment of Claims Entitled to Priority under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).**

42.     The treatment of Administrative Claims, Professional Claims, Priority Tax Claims

and Other Priority Claims, under Article II of the Plan, satisfies the requirements of, and

complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**W.      Acceptance by at Least One Impaired Class—Section 1129(a)(10).**

43.     The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy

Code.  As evidenced by the Johnson Tabulation Declaration and Pullo Confirmation Declaration,

Class A voted to accept the Plan by the requisite numbers and amounts of Claims, determined

without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

### X.    Feasibility—Section 1129(a)(11).

44.    The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.  The financial projections attached to the Plan Supplement and the other evidence supporting confirmation of the Plan proffered or adduced by the Debtors at, or prior to, or in a declaration filed in connection with, the Confirmation Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.  Therefore, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

### Y.    Payment of Fees—Section 1129(a)(12).

45.    The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.  Section 2.5 of the Plan provides for the payment of all fees due and payable by the Debtors under 28 U.S.C. § 1930.

### Z.    Non-Applicability of Certain Sections—Sections 1129(a)(13), (14), (15), and (16).

46.    Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.  The Debtors do not provide retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), do not owe domestic support obligations, are not an individual, and are not a nonprofit corporation.

**AA.** **No Unfair Discrimination; Fair and Equitable Treatment—Section 1129(b).**

47.     All of the applicable requirements of section 1129(a), including section

1129(a)(8), have been satisfied.  Therefore, section 1129(b) of the Bankruptcy Code does not

apply.

**BB.** **Only One Plan—Section 1129(c).**

48.     The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.

The Plan is the only chapter 11 plan filed in the Chapter 11 Cases.

**CC.** **Principal Purpose of the Plan—Section 1129(d).**

49.     The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the

application of section 5 of the Securities Act.

**DD.** **Good Faith Solicitation—Section 1125(e).**

50.     The Debtors (and their respective directors, officers, members, shareholders,

employees, attorneys, investment bankers, financial advisors and agents) have acted in "good

faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the

applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of

their respective activities relating to support and consummation of the Plan, including the

execution, delivery, and performance of the solicitation and receipt of acceptances of the Plan,

and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**EE.** **Satisfaction of Confirmation Requirements.**

51.     Based on the foregoing, the Plan satisfies the requirements for Confirmation set

forth in section 1129 of the Bankruptcy Code.

**FF.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

52.    Each of the conditions precedent to the Effective Date, as set forth in Section 9.1 of the Plan, has been or is reasonably likely to be satisfied or, as applicable, waived in accordance with Section 9.2 of the Plan.

**GG.    Implementation.**

53.    All documents necessary to implement the Plan, including those contained in the Plan Supplement and all other relevant and necessary documents, have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any applicable law.

**HH.    Disclosure of Facts.**

54.    The Debtors have disclosed all material facts regarding the Plan and the transactions contemplated therein, including with respect to the Senior Notes and the Junior PIK Notes.  The Debtors also disclosed steps they intend to take in the near future to consolidate and streamline their organization.

**II.    Good Faith.**

55.    The Debtors, the Released Parties, and the Releasing Parties have been and will be acting in good faith if they proceed to:  (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order.

**JJ.    Releases, Injunction and Exculpation.**

56.    The release, injunction, discharge and exculpation provisions contained in Article VIII of the Plan (collectively, the "Releases") constitute good-faith compromises and settlements of the matters covered thereby.  Such Releases are given in exchange for and are supported by fair, sufficient and adequate consideration as well as the substantial contribution provided by

each and all of the Released Parties and the Exculpated Parties and (i) are in the best interests of the Debtors, their Estate and Holders of Claims and Interests, (ii) are fair, equitable and reasonable, in that, as pertains the third-party releases in Section 8.4 of the Plan, are consensual in that they are limited to all Holders of an Old Notes Claim who voted to accept the Plan; and (iii) are integral elements of the restructuring and resolution of the Chapter 11 Cases in accordance with the Plan.  The failure to approve the Releases would seriously impair the Debtors' ability to confirm the Plan.

57.     Each of the Releases set forth in the Plan: (a) is within the jurisdiction of the Court under 28 U.S.C. § 1334(a), (b) and (d); (b) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) is an integral and non-severable elements of the settlements and transactions incorporated into the Plan; (d) confers a material benefit on, and is in the best interests of, the Debtors, their Estates, and the Holders of Old Notes Claims; (e) is important to the overall objectives of the Plan to finally resolve all Old Notes Claims; and (f) is consistent with sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code.

**KK.     Retention of Jurisdiction.**

58.     The Court may properly retain jurisdiction over the matters set forth in Section 11.1 of the Plan and/or section 1142 of the Bankruptcy Code.

## ORDER

IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

59.     **Findings of Fact and Conclusions of Law**.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made

applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

60.     **Disclosure Statement**.  The Disclosure Statement:  (a) complies in all respects with any disclosure requirements of any applicable nonbankruptcy law, rule or regulation, including the Securities Act; (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan and the transactions contemplated therein and complies with any additional requirements of the Bankruptcy Code and the Bankruptcy Rules; and (c) is approved in all respects.

61.     **Ballots**.  The Ballots and Master Ballots are in compliance with Bankruptcy Rule 3018(c), conform to Official Form B14 and are approved in all respects.

62.     **Solicitation**.  The Solicitation Procedures, including the length and manner of solicitation of votes and the tabulation process, complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Scheduling Order, all other provisions of the Bankruptcy Code, the Local Rules, the Guidelines and all other applicable rules, laws, and regulations, and were appropriate and satisfactory and are approved in all respects.

63.     **Notice of the Confirmation Hearing**.  Notice of the Confirmation Hearing complied with the terms of the Scheduling Order, was appropriate and satisfactory under the circumstances of the Chapter 11 Cases and is approved in all respects.

64.     **Confirmation of the Plan**.  The Plan, attached hereto as **Exhibit A,** as modified by the Confirmation Hearing Modifications, including each of the documents that comprise the Plan Supplement, is approved in its entirety and CONFIRMED under section 1129 of the

Bankruptcy Code. The terms of the Plan, including the Plan Supplement and amendments

thereto, are incorporated by reference into and are an integral part of this Confirmation Order.

65.    **Confirmation Hearing Modifications.** The Plan and the indenture governing

the Senior Notes or the Junior PIK Notes, as the case may be, as provided by the Plan shall be

modified as follows:

a.   One or more of the Existing Equityholders will make an additional common equity contribution in the amount of 30 million Pesos (the "Additional Shareholder Contribution Amount") (which for the avoidance of doubt shall be in addition to the Shareholder Contribution Amount), with such Additional Shareholder Contribution Amount to be made on or before November 30, 2019. The Additional Shareholder Contribution Amount is to be used only to increase the liquidity of the Company and for operations and capital expenditures.

b.   In accordance with section 1126(d) of the Bankruptcy Code and Bankruptcy Rule 3019(a), the effectiveness of the Plan shall be conditioned upon the Company having obtained the written consent of the Existing Equityholders to the Confirmation Hearing Modifications to the Additional Shareholder Contribution, the Junior PIK Notes Director and the Equity Conversion Option (each as defined below) in compliance with applicable non-bankruptcy law and Bankruptcy Rule 3019.

c.   In connection with, and to be appointed at the next Annual Shareholders' Meeting of Maxcom Parent, one (1) of the directors (the "Junior PIK Notes Director") of the Maxcom Parent Board of Directors (the "Maxcom Board") shall be selected by the Holders of the Junior PIK Notes (excluding any Affiliates or Insiders of Maxcom Parent) who together hold more than 50.1% of the Junior PIK Notes, with such amount to be certified by the Holders as of the date of the notice provided by such Holders. The selection of the Junior PIK Notes Director shall be subject to the prior approval of the Maxcom Board, which approval will not be unreasonably withheld. The Junior PIK Notes Director will be a member of the Executive, Audit and Best Practices Committee of the Maxcom Board, and will have the same level of access to information of Maxcom Parent and its management team as any other director of the Maxcom Board, with the same rights and privileges of other members of the Maxcom Board, including compensation and expenses reimbursement.

d.   The initial aggregate principal amount of the Junior PIK Notes shall be US$20 million, with the principal amount of the Junior PIK Notes increasing by fifteen percent (15%) per annum on each anniversary of the date of issuance (such increase in principal amount is referred to as "PIK Interest"); provided,

however, that in the event a Change of Control occurs on or before the sixth anniversary of the Effective Date of the Plan, the initial aggregate principal amount of the Junior PIK Notes shall be reduced to US$10,337,867 and PIK Interest shall be calculated using the initial aggregate principal amount of US$10,337,867.

e.  The section titled "Change of Control" in the description of the Junior PIK Notes shall provide (a) that the reference to "Full Recovery Value" shall not limit the amount of any recovery to Holders of the Junior PIK Notes in a Change of Control such that holders, depending on the implied equity value in such Change of Control, may recover in excess of Full Recovery Value and (b) in the event of a Change of Control transaction where the implied equity value is above US$75 million, Holders of the Junior PIK Notes shall recover fifty-five percent (55%) of any recovery to equity above $75 million up to a Full Recovery Value, and then Holders of the Junior PIK Notes shall recover thirty percent (30%) of any additional recovery to equity.

f.  In the event that a Change of Control does not occur on or before the sixth anniversary of the Effective Date of the Plan, Holders of the Junior PIK Notes may convert all of the Junior PIK Notes into common equity of Maxcom Parent, pursuant to a mechanic to be agreed in the final documentation, at an equity value (including voting rights) to be determined by an independent appraiser or investment banker to be selected mutually by Maxcom Parent and the Junior PIK Notes Director (or if Junior PIK Notes Director shall not be serving for any reason, Holders of the Junior PIK Notes (excluding any Affiliates or Insiders of Maxcom Parent) who together hold more than 50% of the Junior PIK Notes (excluding Junior PIK Notes held by Affiliates or Insiders of Maxcom Parent)) (the "Equity Conversion Option"), with the fees and expenses of the independent appraiser or investment banker to be borne by Maxcom Parent; provided, however, that in the event that the Equity Conversion Option would cause the Junior PIK Notes to be treated as debt for accounting purposes, then Maxcom Parent shall work in good faith with the Ad Hoc Group to find an alternative (an "Alternative Junior PIK Notes Instrument") no later than the Effective Date that will provide the Holders of the Junior PIK Notes with an economic equivalent of the Equity Conversion Option.

g.  The Senior Notes will have a first priority lien on the collateral securing the Senior Notes and the Debtors may not grant any senior, pari passu or junior lien on such collateral except Collateral Permitted Liens (as such term is defined in the Indenture for the Senior Notes).

h.  The "Permitted Holders" definition in the Indenture for the Junior PIK Notes will be identical to the definition of such term in the Old Notes Indenture.

i.  The Senior Notes Indenture and the Junior PIK Notes Indenture shall both contain a covenant or provision that provides that so long as any Senior Note or any Junior PIK Note remains outstanding, Maxcom Parent and its Restricted Subsidiaries (as such term is defined in the Senior Notes Indenture) shall not pay any dividend or otherwise make any distribution on account or for the benefit of any equity interests of Maxcom Parent or any Restricted Subsidiary other than (i) such minimum dividends that may be required by Mexican law, (ii) dividends from any Restricted Subsidiary to Maxcom Parent or another Restricted Subsidiary, and (iii) any dividends or payments (including payment-in-kind dividends or any interest, principal payment or redemption) with regard to the Junior PIK Notes.

j.  The Debtors will pay the invoiced professional fees of the advisors to the Ad Hoc Group in an aggregate amount not to exceed US$250,000, subject to an order of this Court approving such fees upon an application made to the Court for approval of such fees.

66.  **Objections**.  All objections and all reservations of rights pertaining to Confirmation of the Plan or approval of the Disclosure Statement that have not been withdrawn, waived, or settled are overruled in their entirety on the merits.

67.  **No Action Required**.  Under the provisions of applicable law and section 1142(b) of the Bankruptcy Code, no action of the respective directors, equity holders, managers, or members of the Debtors is required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including the issuance of the Senior Notes and Junior PIK Notes.

68.  **Binding Effect**.  Upon the occurrence of the Effective Date, the terms of the Plan are immediately effective and enforceable and deemed binding on the Debtors, the Reorganized Debtors, any and all holders of Claims or Interests (regardless of whether such holders of Claims or Interests have, or are deemed to have, accepted the Plan), the Trustee, the banks at which the Debtors maintain any Bank Accounts listed on **Exhibit B** hereto, all Entities that are parties to or

are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, and each Entity acquiring property under the Plan.

69.    **Continued Existence.**  Each Debtor shall continue to exist on and after the Effective Date as a corporate entity, with all of the rights and powers applicable to such entity under applicable law and its organizational documents.  After the Effective Date, the Reorganized Debtors may amend and restate their certificates or articles of incorporation, by-laws, or similar governing documents, as applicable, as permitted by applicable law.

70.    **Vesting of Assets in the Reorganized Debtors**.  Pursuant to section 1141(b) of the Bankruptcy Code, all property of the Estate, including all claims, rights, and causes of action and any property owned by the Debtors as of or after the Petition Date (including, for the avoidance of doubt, all amounts on deposit in the Debtors' Bank Accounts listed on **Exhibit B** hereto, which for the avoidance of doubt shall include all funds on deposit at CI Banco, account number ending in last 4 digits 9344), together with any property of the Debtors that is not property of the Estate and that is not specifically disposed of pursuant to the Plan, shall revest in the respective Reorganized Debtor on the Effective Date free and clear of all Claims, Liens, charges, other encumbrances and Interests, except as specifically provided in the Plan or this Confirmation Order.  Thereafter, the Reorganized Debtors may operate their business and may use, acquire, and dispose of all such property free of any restrictions of the Bankruptcy Code and the Bankruptcy Rules, including without limitation, to make any distributions required under the Plan.  As of the Effective Date, all property of the Reorganized Debtors shall be free and clear of all Claims, Liens, charges, other encumbrances and Interests, except as specifically provided in the Plan or this Confirmation Order.

71.     **Cancellation of Liens; Discharge from Senior Secured Notes, Instruments,**

**Certificates, and Other Documents**.  Except as otherwise provided in the Plan, on the Effective

Date, in consideration for the distributions to be made on the Effective Date pursuant to the Plan,

(1) the Old Notes, the Old Notes Indenture, the Old Notes Guarantees, the Subsidiary Guarantee,

the Intercompany Trust Agreement, the Intercompany Subordination Agreement, the other

Collateral Documents and any other certificate, share, note, bond, indenture, purchase right,

option, warrant, or other instrument or document, directly or indirectly, evidencing or creating

any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or

Interest (except such certificates, notes, or other instruments or documents evidencing

indebtedness or obligations of or ownership interest in the Debtors that are specifically

Reinstated or otherwise not Impaired under the Plan) shall be deemed cancelled, discharged,

released and extinguished, and neither the Debtors nor the Non-Debtor Guarantors shall have any

continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or

pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or

articles of incorporation or similar documents governing the shares, certificates, notes, bonds,

purchase rights, options, warrants, or other instruments or documents evidencing or creating any

indebtedness or obligation of or ownership interest in the Debtors (except such agreements,

certificates, notes, or other instruments evidencing indebtedness or obligations of or ownership

interests in the Debtors that are specifically Reinstated or otherwise not Impaired under the Plan)

shall be released and discharged; provided, however, notwithstanding Confirmation or the

occurrence of the Effective Date, any such indenture or agreement that governs the rights of the

Holder of a Claim shall continue in effect solely for purposes of enabling Holders of Allowed

Claims to receive distributions under the Plan as provided herein; provided further, however, that

the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any expense or liability to the Reorganized Debtors, except to the extent set forth in or provided for under this Plan. Notwithstanding the foregoing and solely for the purpose set forth in this sentence, the following rights of the Trustee shall remain in effect after the Effective Date: (1) rights to payment of fees, expenses and indemnification obligations, including from property distributed hereunder to the Trustee, whether pursuant to the exercise of a charging lien or otherwise, (2) rights relating to distributions made to Holders of Allowed Old Notes Claims by the Trustee from any source, including distributions hereunder, (3) rights relating to representation of the interests of the Holders of Old Notes Claims by the Trustee in the Chapter 11 Cases to the extent not discharged or released hereunder or any order of the Bankruptcy Court, and (4) rights relating to participation by the Trustee in any proceedings related to the Plan.  On and after the Effective Date, all duties and responsibilities of the Trustee shall be discharged unless otherwise specifically set forth in or provided for under the Plan.

72.    **Discharge**.  Except as otherwise provided for in the Plan and effective as of the Effective Date:  (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any  nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property or Estate; (b) the Plan shall bind all Holders of Old Notes Claims, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Old Notes Claims shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the

Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the

Debtors' Estates, the Reorganized Debtors and the Non-Debtor Guarantors (and each of their

assets and properties) any claim, demand or cause of action in respect of the Old Notes Claims

based upon any documents, instruments, or any act or omission, transaction, or other activity of

any kind or nature that occurred prior to the Effective Date.

73.     **Exemption from Registration Requirements**.  The issuance of the Senior Notes

and Junior PIK Notes shall be exempt from registration under section 1145 of the Bankruptcy

Code and, to the extent applicable, under applicable securities laws.  All documents, agreements

and instruments entered into and delivered on or as of the Effective Date contemplated by or in

furtherance of this Plan shall become effective and binding in accordance with their respective

terms and conditions upon the parties thereto, in each case without further notice to or order of

the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote,

consent, authorization, or approval of any Entity (other than as expressly required by such

applicable agreement).  The Senior Notes and Junior PIK Notes shall be tradeable by the

recipients thereof, subject to the restrictions, if any, imposed on the transferability of such

securities under applicable law.

74.     **The Senior Notes and Junior PIK Notes**.  Subject to, and upon the occurrence

of, the Effective Date, the Reorganized Debtors are authorized to issue, execute, deliver or

otherwise bring into effect, as the case may be, to or for the benefit of the holders of Old Notes

Claims, the Senior Notes and Junior PIK Notes and any other instruments, certificates, and other

documents or agreements required to be issued, executed or delivered in connection with the

authorization and issuance of the Senior Notes and Junior PIK Notes, in each case without need

for further notice to or order of the Bankruptcy Court.

75.     **The Cash Payment and Early Participation Consideration**.  Subject to, and upon the occurrence of, the Effective Date, the Reorganized Debtors are authorized to pay the Cash Payment and Early Participation Consideration in accordance with the terms and conditions of Section 3.2 of the Plan, including without limitation, that only Holders of Old Notes on the June 14, 2019 Record Date who tendered all of their Old Notes on or before the Early Participation Date shall be entitled to receive the Early Participation Consideration.  The Debtors are hereby authorized to use any and all funds maintained on deposit in the Debtors' Bank Accounts listed on **Exhibit B** hereto, which for the avoidance of doubt shall include all funds on deposit at CI Banco, account number ending in last 4 digits 9344, for the purpose of paying all obligations under the Plan, including the payment of the Cash Payment and the Early Participation Consideration.

76.     **Distributions on Account of Old Notes Claims**.  All distributions on account of Allowed Old Notes Claims under the Plan shall be made in accordance with the terms and conditions set forth in the Plan, including Section 6.4 of the Plan.  Any Holder of Old Notes who fails to comply with the conditions set forth in Section 6.4 of the Plan needed to receive the Senior Notes and Junior PIK Notes within one hundred and eighty (180) days after the Effective Date shall have its Claim on account of the Old Notes and its distribution pursuant to the Plan on account of such Old Notes Claim discharged and forfeited and shall not participate in any distribution under the Plan.  All property in respect of such forfeited Old Notes Claims, including without limitation, such holder's pro rata share of Senior Notes and Junior PIK Notes, shall revert to the Reorganized Debtors.

77.     **Treatment of Executory Contracts and Unexpired Leases**.  Except as otherwise provided for in the Confirmation Order, entry of the Confirmation Order shall

constitute a Court order approving the assumption or assumption and assignment, as applicable, of all of the Debtors' Executory Contracts and Unexpired Leases.  To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change in control" provision), such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  None of the Restructuring Transactions taken by the Debtors of the Reorganized Debtors, as applicable, to effectuate the Plan shall be deemed to trigger any "change of control" provision in any contract or agreement including any Executory Contract or Unexpired Lease.

78.    **Additional Transactions Authorized under the Plan**.  On or after the Effective Date, the Reorganized Debtors shall be authorized to take any such actions as may be necessary or appropriate to Reinstate Claims or Interests or render Claims or Interests not Impaired, as provided for under the Plan.

79.    **Comprehensive Settlement of Claims and Controversies.**  Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good-faith compromise and settlement of all Claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest.  The entry of this Confirmation Order constitutes the Court's approval, as of the Effective Date, of the compromise or settlement

of all such claims or controversies and the Court's finding that all such compromises or

settlements are in the best interests (i) of the Debtors, the Reorganized Debtors, the Estates and

(ii) Claim and Interest holders, and are fair, equitable, and reasonable.

80.     **Survival of Indemnification and Exculpation Obligations**. The obligations of

the Debtors to indemnify and exculpate any past and present directors, officers, agents,

employees and representatives who provided services to the Debtors prior to or after the Petition

Date, pursuant to certificates or articles of incorporation, by-laws, contracts, and/or applicable

statutes, in respect of all actions, suits, and proceedings against any of such officers, directors,

agents, employees, and representatives, based upon any act or omission related to service with,

for or on behalf of the Debtors, shall not be discharged or Impaired by Confirmation or

consummation of the Plan and shall be assumed by the Reorganized Debtors.  For the avoidance

of doubt, this paragraph and the Plan affect only the obligations of the Debtors and Reorganized

Debtors with respect to any indemnity or exculpation owed to or for the benefit of past and

present directors, officers, agents, employees, and representatives of the Debtors, and shall have

no effect on nor in any way discharge or reduce, in whole or in part, any obligation of any other

Person, including any provider of director and officer insurance, owed to or for the benefit of

such past and present directors, officers, agents, employees, and representatives of the Debtors.

81.     **Authorization to Consummate**.  The Debtors are authorized to consummate the

Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by

the required parties) of the conditions precedent to Consummation set forth in Article IX of the

Plan.

82.     **Final Fee Applications**.  All requests for payment of Professional Claims for

services rendered and reimbursement of expenses incurred prior to the Effective Date must be

filed no later than 45 days after the Effective Date. The Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code. The Reorganized Debtors shall pay Professional Claims in Cash in the amount that the Court allows. From and after the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

83. **Administrative Claims**. Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or Reorganized Debtors, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim either: (a) on the Effective Date, or as soon as reasonably practicable thereafter; (b) if the Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (c) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of its business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claims.

84.     **Costs and Expenses of the Trustee**.  The Reorganized Debtors shall pay the

costs and expenses incurred by the Trustee (including the reasonable and documented fees and

expenses of counsel to the Trustee) (a) on or as soon as practicable after the Effective Date, for

such costs and expenses invoiced and unpaid through the Effective Date; and (b) thereafter, at

such times as such costs and expenses may be invoiced and payable in the ordinary course,

regardless of whether such costs and expenses arose prior to confirmation.  To be payable by the

Reorganized Debtors, all invoices submitted to the Reorganized Debtors must be reasonable and

contain sufficient detail so as to permit the Reorganized Debtors to ascertain the necessity and

reasonableness of such costs and expenses (provided that the Trustee shall not be required to

waive any privilege to which it may be entitled).

85.     **Release, Exculpation, and Injunction Provisions**.  The release, exculpation,

injunction, and related provisions set forth in Sections 8.3, 8.4, 8.5 and 8.6 of the Plan are

approved and authorized in their entirety, and such provisions are effective and binding on all

Persons and Entities to the extent provided in the Plan.

86.     **Payment of Statutory Fees**.  On the Effective Date, the Debtors shall pay, in full

in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation.  On and after

the Effective Date, the Reorganized Debtors shall pay the applicable U.S. Trustee fees pursuant

to 28 U.S.C. § 1930(a) and any applicable interest thereof pursuant to 31 U.S.C. § 3717 until the

Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

87.     **Compliance with Tax Requirements**.  In connection with the Plan and all

distributions thereunder, the Reorganized Debtors shall comply with all withholding and

reporting requirements imposed by any federal, state, local or foreign taxing authority, and all

distributions hereunder shall be subject to any such withholding and reporting requirements.  The

Reorganized Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes or establishing such other mechanisms that the Reorganized Debtors believe are reasonable and appropriate.   The Debtors or the Reorganized Debtors, as applicable, reserve the right to allocate and distribute all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, Liens and similar encumbrances.

88.    **Exemption from Transfer Taxes**.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan, including without limitation, the discharge of the Old Notes and the issuance of the Senior Notes and Junior PIK Notes, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing, or recording fee or other similar tax or governmental assessment in the United States.  This Confirmation Order shall direct the appropriate federal, state, or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

89.    **Insurance Policies and Agreements**.  Insurance policies issued to, or insurance agreements entered into by, the Debtors prior to the Petition Date (including, without limitation, any policies covering directors' or officers' conduct) shall continue in effect after the Effective Date.  To the extent that such insurance policies or agreements are considered to be Executory Contracts or Unexpired Leases, the Plan shall constitute a motion to assume or ratify such

insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry

of this Confirmation Order shall constitute approval of such assumption pursuant to

section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such

assumption is in the best interest of the Debtors and their Estates. Unless otherwise determined

by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the

Effective Date, no payments shall be required to cure any defaults of the Debtors existing as of

the Confirmation Date with respect to each such insurance policy.

90.    **Documents, Mortgages, and Instruments**.  Each federal, state, commonwealth,

local, foreign, or other governmental agency is authorized to accept any and all documents,

mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate

the Plan and this Confirmation Order.

91.    **Continued Effect of Stays and Injunction**.  All injunctions or stays provided for

in the Chapter 11 Cases under section 105 or section 362 of the Bankruptcy Code, or otherwise,

and in existence on the Confirmation Date, shall remain in full force and effect until the

Effective Date.

92.    **Nonseverability of Plan Provisions upon Confirmation**.  Each provision of the

Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be

deleted or modified without the consent of the Debtors and except as provided in paragraph 93

below; and (c) non-severable and mutually dependent.

93.    **Amendment or Modification of the Plan**.  Without the need for further order or

authorization of the Court, the Debtors and Reorganized Debtors, as applicable, are authorized

and empowered to make any and all modifications to any and all documents that are necessary to

effectuate the Plan that do not materially modify the terms of such documents and are otherwise

consistent with the Plan.  Subject to section 1127 of the Bankruptcy Code, the Debtors may alter, amend or modify the Plan or any exhibits thereto at any time prior to or after the Confirmation Date but prior to the substantial consummation of the Plan.  Any holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.  Entry of the Confirmation Order means that all modifications or amendments to the Plan since the solicitation thereof and made herein are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019 of the holders of Claims, but as a condition to the Effective Date the Debtors shall obtain the Existing Equityholder Consent to the Additional Shareholder Contribution, the Junior PIK Notes Director and the Equity Conversion Option pursuant to Bankruptcy Rule 3019(a).

94.    **Governing Law**.  Subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York, without giving effect to the principles of conflicts of law.

95.    **Applicable Nonbankruptcy Law**.  The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

96.    **Waiver of Filings**.  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the

Court or the Office of the U.S. Trustee is permanently waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

97.     **Governmental Approvals Not Required**.  Except as otherwise stated in the Plan, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

98.     **Notice of Effective Date**.  On or before the tenth (10th) day following the occurrence of the Effective Date, the Debtors shall file and serve notice of the occurrence of the Effective Date pursuant to Bankruptcy Rules 2002 and 3020.  The notice described herein is adequate and appropriate under the particular circumstances of these Chapter 11 Cases, and no other or further notice is necessary.

99.     **Reports Under Bankruptcy Rule 3022 and Local Rule 3022-1**.  The Debtors shall file quarterly reports with the Bankruptcy Court regarding the implementation of the Plan and, within fourteen (14) days after the date that the Debtors' Estates are fully administered, a final report substantially in the form available on the Bankruptcy Court's website and a request to close the Chapter 11 Cases

100.     **Effect of Non-Consummation**.  If the Effective Date does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), and any document or agreement executed pursuant to the Plan shall be

deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or

release of any Claims by or against, or any Interests in, the Debtors or any other Person, (ii)

prejudice in any manner the rights of the Debtors, or any other Person, or (iii) constitute an

admission of any sort by the Debtors, or any other Person.

101.    **Substantial Consummation**.  On the Effective Date, the Plan shall be deemed to

be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

102.    **Waiver of Stay**.  For good cause shown, the stay of this Confirmation Order

provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and

enforceable immediately upon its entry by the Court.

103.    **References to and Omissions of Plan Provisions**.  References to articles,

sections, and provisions of the Plan are inserted for convenience of reference only and are not

intended to be a part of or to affect the interpretation of the Plan.  The failure to specifically

include or to refer to any particular article, section, or provision of the Plan in this Confirmation

Order shall not diminish or impair the effectiveness of such article, section, or provision, it being

the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified

herein, and incorporated herein by this reference.

104.    **Headings**.  Headings utilized herein are for convenience and reference only, and

do not constitute a part of the Plan or this Confirmation Order for any other purpose.

105.    **Effect of Conflict**.  This Confirmation Order supersedes any Court order issued

prior to the Confirmation Date that may be inconsistent with this Confirmation Order.  If there is

any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the

terms of this Confirmation Order govern and control.

106.    **Final Order**.  This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

107.    **Retention of Jurisdiction**.  The Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Section 11.1 of the Plan and section 1142 of the Bankruptcy Code.

108.    Nothing in the Plan or this Confirmation Order shall affect, impair or modify that certain loan issued by Banco Nacional de Comercio Exterior, S.N.C, Banca de Desarrollo ("Bancomext"), BBVA Bancomer, S.A., Institución de Banca Múltiple, Grupo Financiero BBV Bancomer ("BBVA"), and Banco Mercantil del Norte ("Banorte," and, together with BBVA and Bancomext, the "Bancomext Loan Entities") to Debtor Maxcom Parent in October 2015 in the original principal amount of MexPs 150 million (the "Bancomext Loan," and together with any credit agreements, pledge agreements, trust agreements and related loan documents, the "Bancomext Loan Documents")) or any rights related thereto, and all of the rights and obligations of Debtor Maxcom Parent and the Bancomext Loan Entities in respect of the Bancomext Loan and Bancomext Loan Documents are preserved in their entirety and shall be enforceable according to their terms.  For the avoidance of doubt, this Court's order dated August 21, 2019 *Authorizing Debtors to Pay Unimpaired Claims in the Ordinary Course of Business* [Docket No. 29] is hereby reaffirmed and any and all payments made by Maxcom Parent  on account of the Bancomext Loan during the pendency of the Chapter 11 Cases shall be and hereby are approved and shall not be subject to avoidance under 11 U.S.C. § 549 or otherwise.

109.     Notwithstanding any provision in the Plan, this Confirmation Order or other

related Plan documents to the contrary, nothing discharges or releases the Debtors, the

Reorganized Debtors, or any non-debtor from any right, claim, liability or cause of action of the

United States or any domestic Governmental Unit (as defined in section 101(27) of the

Bankruptcy Code), or impairs the ability of the United States or any domestic Governmental

Unit to pursue any claim, liability, right, defense, or cause of action against any Debtor,

Reorganized Debtor or non-debtor.  Contracts, purchase orders, agreements, leases, covenants,

guaranties, indemnifications, operating rights agreements or other interests of or with the United

States or any domestic Governmental Unit shall be, subject to any applicable legal or equitable

rights or defenses of the Debtors or Reorganized Debtors under applicable non-bankruptcy law,

paid, treated, determined and administered in the ordinary course of business as if the Debtors'

bankruptcy cases were never filed.  All claims, liabilities, rights, causes of action, or defenses of

or to the United States or any domestic Governmental Unit shall survive the Chapter 11 Cases as

if they had not been commenced and be determined in the ordinary course of business, including

in the manner and by the administrative or judicial tribunals in which such rights, defenses,

claims, liabilities, or causes of action would have been resolved or adjudicated if the Chapter 11

Cases had not been commenced; *provided*, that nothing in the Plan or this Confirmation Order

shall alter any legal or equitable rights or defenses of the Debtors or the Reorganized Debtors

under non-bankruptcy law with respect to any such claim, liability, or cause of action. Without

limiting the foregoing, for the avoidance of doubt: (i) the United States and any domestic

Governmental Unit shall not be required to file any proofs of claim or administrative expense

claims in the Chapter 11 Cases for any right, claim, liability, defense, or cause of action; (ii)

nothing shall affect or impair the exercise of the United States' or any domestic Governmental

41

Unit's police and regulatory powers against the Debtors, the Reorganized Debtors or any non-debtor; (iii) nothing shall be interpreted to set cure amounts or to require the United States or any domestic Governmental Unit to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests; (iv) nothing shall affect or impair the United States' or any domestic Governmental Unit's rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtors or the Reorganized Debtors and such rights and defenses are expressly preserved; (v) nothing shall constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy law, (vi) nothing shall relieve any party from compliance with all licenses and permits in accordance with non-bankruptcy law.  In addition, no provision in the Plan, Confirmation Order or other related Plan documents relieves the Debtors or the Reorganized Debtors from their obligations, if any, to comply with the Communications Act of 1934, as amended, and the rules, regulations and orders promulgated thereunder by the Federal Communications Commission ("FCC").  No transfer of any FCC license or authorization held by the Debtors, or transfer of control of a Debtor that is an FCC licensee, or transfer of control of a FCC licensee controlled by the Debtors shall take place prior to the issuance of FCC regulatory approval for such transfer pursuant to applicable FCC regulations.  The FCC's rights and powers to take any action pursuant to its regulatory authority including, but not limited to, imposing any regulatory conditions on any of the above described transfers, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority.

Dated: September 23, 2019
White Plains, New York

/s/ Robert D. Drain
Hon. Robert D. Drain
United States Bankruptcy Judge

## **EXHIBIT A**

**Prepackaged Chapter 11 Plan**

**<u>EXHIBIT B</u>**

**LIST OF BANK ACCOUNTS**